# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN A. DONALDSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 10-cv-635-TLW ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff John A. Donaldson seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 9). Any appeal will be directly to the Tenth Circuit Court of Appeals.

## Social Security Law and Standard of Review

Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of no less than 12 months." 20 C.F.R. § 404.1505(a), and 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of impairment and the severity of the impairment during the time of his alleged disability. 20 C.F.R. § 404.1512(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A

physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by (an individual's) statement of symptoms." 20 C.F.R. § 404.1508. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. § 404.1513(a). A five step sequential process has been implemented by Social Security Regulations to evaluate a disability claim. 20 C.F.R. § 404.1520(a).[1]

The role of the Court in reviewing a decision of the Commissioner is only to determine whether substantial evidence supports the decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

## Procedural History

Plaintiff's application for DIB was filed on January 20, 2009, alleging disability beginning on March 6, 2009. The relevant adjudicated period is from January 20, 2009 to April 29, 2010. Plaintiff's application was initially denied on June 24, 2009 and again upon

---

[1] The five step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

2

reconsideration on August 19, 2009. A hearing before Administrative Law Judge John Volz was held on April 8, 2010. On April 29, 2010, the ALJ entered his decision, which is the subject of this appeal. The appeals council denied request for review on August 18, 2010. The decision of the appeals council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Background

Plaintiff was born in 1953 and was fifty-five years old at the time he filed his application. (R. 78). Plaintiff is considered an individual of advance age according to 20 C.F.R. § 404.1563. Plaintiff has a high school education and has completed four or more years of college. (R. 108, 130). Plaintiff is a widow, has two minor sons living in the home and five sons living outside of the home. (R. 27). Plaintiff's work experience includes employment as a systems engineer, field engineer, laborer, and maintenance technician. (R. 105). Plaintiff's most recent employment was as a maintenance technician at Lifetouch from 2004 until 2009; plaintiff's reason for leaving the job was that "they closed the plant down." (R. 25). Plaintiff receives unemployment benefits. (R. 28).

Plaintiff claims that he has been disabled since 1981, when he injured his back while working. (R. 31). Plaintiff states that the injury caused his arthritis to flare up but that he was denied workers' compensation because the arthritis was said to be a pre-existing condition. (R. 28, 31). Plaintiff claims the pain in his back and neck interferes with his concentration, and the pain in his arms sometimes makes it impossible to drive. (R. 30). He also claims that he has shoulder and elbow joint pain that affect his ability to lift more than a couple of pounds. (R. 30, 31). Plaintiff states that he cannot use hands for computer work because his fingers go numb after 45 minutes. (R. 33). Plaintiff states that when he was working, he was unable to get more

than four or five hours of sleep because of the severe pain. (R. 29-30). Plaintiff sees his primary care physician, Dr. Harris, primarily for pain management. Plaintiff is currently taking Lyrica for pain relief and Celebrex for arthritis. (R. 29, 37).

Plaintiff completed a Disability Report – Adult (Form SSA-3368), stating "spinal arthritis" as the condition that limited his ability to work. (R. 104). Plaintiff stated on a Function Report – Adult form that his daily activities included household chores (from approximately 8:00 a.m. to 8:00 p.m.), "some repair work around the house," helping his sons with homework, watching TV, and checking news and job postings on the internet. (R. 122). He also provides "all care during the day" for his three-year old grandson. (R. 123). On the same form, plaintiff also stated he "[f]requently need[s] pain medication to reduce the pain enough to get at least 5 hr [sic] sleep." Id. He stated he performed "all household chores," but in order for him to "keep up with chores," he must have the help of his sons. (R. 124).

He claimed he walks and drives to travel, shops for groceries and materials for home repairs, and shops for groceries, usually taking him an hour. (R. 125). His hobbies are listed as gardening and hiking. He claimed he gardens daily "with difficulty," noting he "cut[s] the weeds instead of removing" them, and that he hikes "every few months, very slow," noting a change from weekly 10 mile hikes he classified as "easy." (R. 126).

Plaintiff noted decreased activities, stating that lifting 30 pounds causes moderate pain in his shoulders, lower back, and hips, that squatting causes him moderate pain in his hips and knees, that he could walk 100 yards before needing to rest for five to ten minutes, and noting that walking causes moderate pain from the waist down. (R. 127, 129). He also claimed bending causes moderate lower back pain, standing longer than ten minutes causes moderate pain from the waist down, overhead reaching causes minor pain, sitting longer than 30 minutes causes

4

moderate lower back and sciatic nerve pain, and that severe pain in the back of his head makes concentration difficult. (R. 129). Plaintiff was prescribed Celebrex, Lortab, and Lyrica to handle his pain. (R. 155).

Plaintiff's medical records begin in June, 2006, three years before his disability application. (R. 184-194). These records from plaintiff's treating physician, Robert C. Harris, M.D., are sparse, and show pharmaceutical management of his back and leg pain. (R. 184-186). A letter dated February 26, 2009 from Haresh K. Ajmera, M.D., discuss treatment of plaintiff's dysphagia (difficulty swallowing), and attach the procedure reports from plaintiff's visit to Hillcrest Medical Center's emergency room. (R. 187, 162-183). Records dated August, 2009 show plaintiff's visit to Dr. Harris with complaints of "diffuse shoulder and neck pain." Dr. Harris noted fibromyalgia was a possibility for this complaint, but the record shows no testing in that regard. (R. 211). Dr. Harris noted myopathy (muscle disease or damage), and muscle spasms in plaintiff's neck and shoulders. (R. 212). Plaintiff presented to Dr. Harris again January 12, 2010, with complaints of "dull burning pain at [the] bottom of [his] spine." Plaintiff was scheduled for a MRI. The results of the February 16, 2010 MRI were as follows:

> The lumbar spine is in normal alignment on sagittal imaging. Mild disc space narrowing and endplate degenerative changes L4-5 level. Disc desiccation [loss of disc water] throughout lumbar spine except for some sparing at L5-S1 level. Remaining vertebral body heights and disc spaces are preserved. There are no worrisome focal marrow signal abnormalities. The distal cord and conus are normal in signal, caliber and position.
>
> L2/3: There is no significant disc bulge, canal or foraminal stenosis [narrowing of the spinal hole that spinal nerves exit the spine, causing compression of the nerve].
>
> L3/4: Mild rightward broad-based disc bulge. No significant canal or foraminal stenosis.
>
> L4/5: Mild facet arthropathy [type of degenerative arthritis] with mild broad-based disc bulge leftward. No significant canal stenosis. Mild to moderate left foraminal stenosis without significant right foraminal stenosis.

5

> L5/S1: Mild facet arthropathy with no significant disc bulge, canal or foraminal stenosis.

(R. 214-215, 220). The impression was "[d]egenerative changes as above." (R. 215).

The next record is a consultative examination from Seth Nodine, M.D., dated June 16, 2009. (R. 195-201). Plaintiff's complaint was "back pain and I hurt all over." (R. 195). Dr. Nodine noted most systems were normal, plaintiff's grip strength was 5/5 bilaterally, and noted both Rhomberg and Babinski tests were negative. Dr. Nodine referred to the completed forms for additional test results. (R. 197). He noted plaintiff was "very slow and deliberate in movements," that he had stiffness with active and passive movement, he was unable to raise his shoulders above the 110 degree plane with active movement and passive movement showed a decreased range of motion ("ROM"). Id. Dr. Nodine assessed plaintiff with "diffuse arthralgia, myalgia, decreased ROM as described without known diagnosis other than 'arthritis.'" Id. Dr. Nodine noted decreased ROM on most of plaintiff's joints, with the exception of his elbows, wrists, and fingers. (R. 198-200). Dr. Nodine noted negative straight leg testing, yet noted plaintiff's lumbosacral and cervical spine showed pain with weak heel and toe walking. He also noted plaintiff was positive for tenderness and muscle spasms with deep tendon reflex testing. (R. 201).

A physical Residual Functional Capacity ("RFC") form was completed June 24, 2009 by agency reviewer Kenneth Wainner, M.D. (R. 202-209). The form shows a primary diagnosis of arthritis and secondary of back pain. (R. 202). Dr. Wainner assessed plaintiff with a light RFC, deciding he could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk and sit (with normal breaks) six hours (total each) in an eight hour workday, and push/pull was rated unlimited. (R. 203). Dr. Wainner's explanation of "how and why the evidence supports" his conclusions is as follows:

> 55 year old clmt alleging back problems and arthritis. MER in file shows clmt has some back pain at ER visit for dysphagia 02/09. C-scope nl; EGD-esoph ring dilated. ICE 6/16/09 shows clmt has slightly decreased ROM pretty much globally. Clmt states it hurts "all over" and is unable to lift over 30#. SLR was negative, heel/toe weak, gait was slightly slowed but steady without the use of assistance device. Grip was 5/5 c nl manip Clmt had diffuse pain in all muscles and joints by his account.

Id. Dr. Wainner only placed an occasional limitation on stooping, no other postural, manipulative, visual, communicative, or environmental limitations were imposed.

### **Decision of the Administrative Law Judge**

At step one of the five step sequential process, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and that plaintiff has not engaged in substantial gainful activity since March 6, 2009. (R. 13). At step two, the ALJ found plaintiff's severe impairments to be diffuse arthralgia/myalgia. Id. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meet the medical equivalent of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listing 1.02. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The ALJ then determined plaintiff's RFC. An RFC is the highest level at which a claimant can perform despite limitations from impairments. In determining an RFC, all of claimant's impairments must be considered. The ALJ found that plaintiff can perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). "He can lift/carry or push/pull 20 pounds occasionally or 10 pounds frequently. In an 8-hour workday, he can stand/walk or sit for 6 hours with normal breaks." (R. 14).

At step four, the ALJ found plaintiff capable of performing past relevant work as a photo technician and assistant engineer, thus resulting in a finding of not disabled. The ALJ then made an alternative finding of not disabled at step five based on the Vocational Expert's ("VE") testimony. The VE testified that based on an individual with plaintiff's vocational background

7

and RFC, there are other light jobs in the regional and national economy that plaintiff can perform.[2] (R. 34, 35).

## Issues on Appeal

Plaintiff contends the decision of the ALJ should be remanded with instructions or that plaintiff should be awarded benefits because:

1. The ALJ failed to perform a proper analysis at steps 4 and 5 of the sequential evaluation process; and

2. The ALJ failed to perform a proper credibility analysis.

## Discussion

Plaintiff's first issue arises out of his argument that the ALJ erred in determining his RFC. More specifically, plaintiff argues that the ALJ failed to include limitations regarding tenderness, muscle spasms, and range of motion in the knees and shoulders from the Consultative Examination ("CE") report of Dr. Nodine on June 16, 2009. (R. 195-201). Each of these limitations is noted on the ratings forms completed by Dr. Nodine.

Plaintiff is correct that these specific limitations were not referenced in the ALJ's decision, but plaintiff is incorrect in alleging that this lack of "reference" was error. The ALJ considered and discussed Dr. Nodine's findings in some detail:

> Examiner Seth Nodine, M.D. wrote that Mr. Donaldson was very slow and deliberate in his movements. He showed stiffness with active and passive movement. The claimant's diagnosis was "diffuse arthralgia/myalgia, decreased range of motion as described without known diagnosis other than 'arthritis.' In a Range of Joint Motion Evaluation Chart, the claimant's back extension range was 15 degrees of a possible 25 degrees (15/25). His back flexion was 75/90 and bilateral back lateral flexion was 15/25. Neck extension was 60/90 while neck flexion had the complete range of 50 degrees. All other ranges were within normal limits except for bilateral hip flexion which had a slight reduction.

---

[2] Light Exertional Arcade Attendant (DOT 342.667-014), and Light Exertional Parking Lot Attendant (DOT 915.473-010).

(R. 14). Furthermore, plaintiff's treating physician, Dr. Harris, did not provide any opinion or statement regarding plaintiff's limitations. The ALJ stated he placed "great weight" on Dr. Nodine's report, and it is clear to the Court that he considered Dr. Nodine's entire report. In addition, an ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996). "[W]here, as here, the ALJ's decision states that he considered all of the evidence, 'our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.'" (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005)).

As to the other evidence in the record, none of it conflicts with the ALJ's conclusion that plaintiff can perform light work, as set forth in plaintiff's RFC. The MRI report notes:

> The lumbar spine is in normal alignment on sagittal imaging. Mild disc space narrowing with endplate degenerative changes L4-5 level. Disc desiccation throughout lumbar spine except for some sparing at L5-S1 level. Remaining vertebral body heights and disc spaces are preserved. There are no worrisome focal marrow signal abnormalities. The distal cord and conus are normal in signer, caliber, and position.
>
> L2/3: There is no significant disc bulge, canal or foraminal stenosis
>
> L3/4: Mild rightward broad-based disc bulge. No significant canal or foraminal stenosis.
>
> L4/5: Mild facet arthropathy with mild broad-based disc bulge leftward. No significant canal stenosis. Mild to moderate left foraminal stenosis without significant right foraminal senosis.
>
> L5/S1: Mild facet arthropathy with no significant disc bulge, canal or foraminal stenosis.

(R. 214). The Physical RFC assessment, completed by Dr. Kenneth Wainner, notes under the Exertional Limitations that plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of – about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of – about 6 hours in an 8 hour workday,

9

and push and/or pull (including operation of hand and/or foot controls) – unlimited, other than as shown for lift and/or carry. (R. 203). In the section of the assessment that explains how and why the evidence supports the conclusion, Dr. Wainner cited the specific facts upon which he based his conclusions:

> 55 year old [plaintiff] alleging back problems and arthritis. MER in file shows [plaintiff] has some back pain at ER visit for dysphagia 02/09. C-scope nl; EGD-esoph ring dilated. ICE 6/16/09 shows [plaintiff] has slightly decreased ROM pretty much globally. [Plaintiff] states it hurts "all over" and is unable to lift over 30#. SLR was negative, heel/toe weak, gait was slightly slowed but steady without the use of assistance device. Grip was 5/5 c nl manip [plaintiff] had diffuse pain in all muscles and joints by his account.

(R. 203). Dr. Wainner further noted that plaintiff's only other limitation was a Postural Limitation indicating that plaintiff could only occasionally stoop. (R. 204). Plaintiff did not have manipulative, visual, communicative, or environmental limitations. (R. 205, 206). The medical evidence of record supports the ALJ's determination that plaintiff can perform light work, thus supporting the RFC determination.

Plaintiff further argues that the ALJ is relying on faulty evidence, because the Physical Residual Functional Capacity Assessment was based on an incomplete analysis of the CE's findings. Dr. Wainner's Physical RFC Assessment on June 24, 2009 adopted the CE report by Dr. Nodine. (Exhibit 4F). In the explanation section explaining how and why the evidence supports his conclusion, Dr. Wainner states that the "[CE report] 6/16/09 shows [plaintiff] has slightly decreased ROM pretty much globally." (R. 203). The statement confirms that Dr. Wainner relied on Dr. Nodine's report in determining plaintiff's exertional limitations. There is no reason, as plaintiff stipulates, for the Court to think that Dr. Wainner's analysis of the CE report was incomplete. The ALJ's assessment of plaintiff's RFC is consistent with that of the physical RFC assessment on June 24, 2009.

Plaintiff also argues that the ALJ erred in not providing limitations on plaintiff's ability to reach and that plaintiff's past and future jobs required the ability to do so frequently. The Court finds no merit to this argument. Plaintiff admitted that reaching overhead usually only causes "minor pain" (R. 129) and that his past jobs did not require him to reach. (R. 132-136). In addition, plaintiff never mentioned during the hearing that he had pain when reaching. When the ALJ asked plaintiff to explain how his shoulder pain affects his ability to use his arms, plaintiff replied that "I can't <u>lift</u> more than a couple of pounds without increasing my pain." (R. 31) (emphasis added). Plaintiff's only testimony regarding pain in his arms was in relation to lifting, not reaching. Furthermore, in the Physical RFC assessment, there were no limitations on reaching in the manipulative limitations section. (R. 205). In addition, the inability to work pain free is not a sufficient reason to find that plaintiff is disabled. See Jaramillo v. Massanari, 21 Fed.Appx 792, 796 (10th Cir. 2001) (citing Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988)).

Plaintiff also argues that the ALJ failed to state what weight he assigned to the CE and state reviewer. The ALJ stated that he imparted "great weight" to the consultative examination and to Dr. Wainner's assessment. The ALJ then further explains that the findings of Dr. Wainner "attributed the claimant with the full range of light work ability with only an occasional limitation on stooping. There were no manipulative or environmental limitations (Exhibit 4F)." (R. 15). The ALJ stated the weight and properly explained it according to 20 C.F.R. § 404.1527(f)(2)(ii). Thus, plaintiff's argument fails.

The Court finds that the ALJ's determination that plaintiff's impairments or combination of impairments do not limit his ability to work is supported by substantial evidence. The ALJ's assessment of plaintiff's RFC is consistent with that of the physical RFC assessment. The ALJ

properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC.

Plaintiff next argues that the ALJ's credibility analysis was faulty, because he used boilerplate language and failed to follow the factors set forth in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). The Court disagrees. In Rhodes v. Barnhart, 117 Fed.Appx. 622, 629 (10th Cir. 2004) (unpublished), even though the ALJ came close to using improper boilerplate language, the credibility determination was affirmed when the ALJ's "basic thrust" was supported by substantial evidence. See also Mann v. Astrue, 284 Fed.Appx. 567, 571 (10th Cir. 2008) (unpublished) (finding credibility determination adequate when ALJ discussed three points). Here, even though the ALJ used some boilerplate language, he fully discussed the factors used in determining the credibility of plaintiff, and he specifically set forth the evidence on which he relied.

The ALJ mentioned plaintiff's daily activities: "he still pursues his interest in gardening and hiking." (R.14). The ALJ discussed the duration, location and frequency of intensity of plaintiff's pain or other symptoms: "[h]e stated he did the gardening with difficulty, that he hiked only every few months, and that he hiked very slowly with frequent resting." (R. 14). The ALJ mentioned factors that precipitate/aggravate plaintiff's symptoms:

> [Plaintiff] said that an injury he had in 1981 eventually caused his arthritis of the spine. The pain he feels in his back and neck makes concentrating difficult. The pain in his arms and shoulders sometimes prevents his driving. He claimed that lifting more than 2 pounds increases his pain . . . he must stand after 20 minutes of sitting. His fingers go numb after keyboarding for 45 minutes and his left hand cramps with use . . . even walking as little as 100 yards was enough to increase his discomfort.

(R. 14). The ALJ discussed the medical findings of Dr. Nodine, the MRI report, and the findings of Dr. Wainner. The ALJ noted from the consultative evaluation by Dr. Nodine that "[plaintiff]

was very slow and deliberate in his movements. He showed stiffness with active and passive movement. The claimant's diagnosis was 'diffuse arthralgia/myalgia, decreased range of motion as described without known diagnosis other than 'arthritis.'" (R. 14). The ALJ also discussed the findings in the MRI report, where the exact status of plaintiff's spinal vertebrae was disclosed:

> The lumbar spine is in normal alignment on sagittal imaging. Mild disc space narrowing with endplate degenerative changes L4-5 level. Disc desiccation throughout lumbar spine except for some sparing at L5-S1 level. Remaining vertebral body heights and disc spaces are preserved. There are no worrisome focal marrow signal abnormalities. The distal cord and conus are normal in signal, caliber and position (Exhibit 7F).[3]

(R. 15). The ALJ went on to discuss that "in the remainder of the report, the individual levels of the lumbar spine were identified having no significant canal stenosis and mild broad-based disc bulging and/or mild facet arthropathy." (R. 15). Lastly, the ALJ discussed the assessment by Dr. Wainner where he "attributed the claimant with the full range of light work ability with only an occasional limitation on stooping. There were no manipulative or environmental limitations (Exhibit 4F)." (R. 15).

The ALJ also cited plaintiff's reason for not working. "[Plaintiff] testified that he stopped working when the business he was working for closed down. Therefore, the ending of his employment had nothing to do with his alleged impairments." (R. 15). The ALJ reasoned that "[h]ad the company continued to operate, it is reasonable to conclude that [plaintiff] would have continued to work." (R. 15). The ALJ further noted that "[plaintiff] said that since he was

---

[3] The Court notes plaintiff's argument that the ALJ did not specifically mention any limitations on the remainder of the MRI report, however, no physician, including plaintiff's treating physician, relied on the results of the MRI to make any changes to plaintiff's treatment or influence them on a medical opinion. The ALJ is not permitted to "play doctor" by attempting to interpret medical testing results on his own. Since the ALJ discussed the MRI report, it is clear to this Court that he considered the entire report.

13

laid off he has been looking for work. This is inconsistent with his allegation to Social Security that he is disabled from his impairment." (R. 15). The record firmly establishes, as the ALJ noted, that plaintiff's reason for not working was that the company shut down. Thus, the ALJ's conclusion that plaintiff's ending of his employment had nothing to do with his alleged impairments is supported by substantial evidence and supports the ALJ's credibility determination.

The ALJ also cited the scarcity of plaintiff's medical record and how "very little of it precedes [plaintiff's] alleged onset date." (R. 15). The ALJ also bases his credibility determination on this evidence, which is supported in the record. The ALJ reasoned that if plaintiff's "back pain had been worsening since 1981 when he was injured, as he alleged, it is reasonable to expect to see medical records from most of the intervening years. Instead, the earliest report of a contact with a physician is dated July 11, 2006 (Exhibit 2F)." (R. 15). The ALJ further noted that "[n]either that brief note nor any subsequent record indicates [plaintiff] having disabling impairment." (R. 15). The ALJ relies on the MRI report which he stated "indicated no particularly significant abnormality"; Dr. Nodine's report which he stated "indicated some loss of range of motion in the back, but not to any incapacitating level"; and the functional report where plaintiff "remains able to attend to his activities of daily living, including gardening and occasional hiking, all household chores, driving, and grocery shopping (Exhibit 4E)." (R. 15). The record establishes that there are little medical records predating the alleged onset date, thus supporting the ALJ's credibility determination.

Plaintiff argues that the ALJ failed to develop the record by not inquiring about past medical history at the hearing. The Tenth Circuit, in Maes v. Astrue, 522 F.3d 1093 (10th Cir. 2008), said:

> Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record-indeed, to exhort the ALJ that the case is ready for decision-and later fault the ALJ for not performing a more exhaustive investigation. To do so would contravene the principle that the ALJ is not required to act as the claimant's advocate in order to meet his duty to develop the record. This is especially true where, as here, neither counsel nor the claimant have obtained (or, so far as we can tell, tried to obtain) for themselves the records about which they now complain-suggesting that counsel has abandoned his role as advocate in favor of relegating that responsibility to the ALJ. In short, we will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete.

Id. at 1096-1097. Plaintiff was represented by counsel at the hearing. (R. 23). The ALJ asked plaintiff's counsel if there were any objections to the exhibits filed to which counsel replied, "No, Your Honor." (R. 23). Thus, plaintiff's counsel made no objections to the exhibits and failed to indicate that they were not complete. Thus, plaintiff's argument fails.

Plaintiff further argues that the ALJ disregarded plaintiff's financial hardship by ignoring that plaintiff had to pay for his MRI out of pocket. The record contains no evidence that plaintiff sought medical treatment but was refused because of his inability to pay. The only evidence of record concerning plaintiff's ability to pay was during the hearing when he stated that the MRI was paid out of pocket: "[t]hat MRI I paid out of my own pocket because I was certain it would show that - - validate - - I was sure that it would show that there was a substantial problem because that is the area that was injured in '81." (R. 37). The Tenth Circuit has stated that the failure of a plaintiff to seek low-cost medical treatment, and lack of evidence that he was denied medical care because of financial hardship, supports a determination that financial hardship was not severe enough to justify the failure to seek treatment. See Allen v. Apfel, 216 F.3d 1086 (10th Cir. 2000) (unpublished)[4] (citing Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir.

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

1992)). Plaintiff was not refused medical treatment because of his inability to pay. Rather, it was plaintiff's decision to pay for the MRI out of pocket because of the possibility of it showing a substantial problem in his back.

Plaintiff also argues that the ALJ was improperly picking and choosing evidence to support his decision. Plaintiff argues that his performance of household chores does not establish his capability to engage in substantial gainful activity. However, a factor the ALJ can take into consideration is plaintiff's ability to perform daily activities. Plaintiff's effort to curtail his daily activities is essentially a request to reweigh the evidence in his favor, something this Court cannot do. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). The ALJ identified the specific evidence he relied on, and his credibility determination is supported by substantial evidence. An ALJ's credibility findings warrant particular deference, because he is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2001).

The ALJ accurately set forth the relevant factors and thoroughly discussed plaintiff's complaints and alleged symptoms that he considered in assessing plaintiff's credibility. The ALJ further tied his credibility finding to specific evidence and explained why plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 15). The ALJ complied with the standard in Kepler v. Chater, 68 F.3d 387 at 391 (10th Cir. 1995) by referring to and linking the specific evidence he is relying on to the credibility determination. The Tenth Circuit has made clear that "our opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he

16

relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." Qualls, 206 F.3d at 1372.

Based on the foregoing, the Court finds that the ALJ affirmatively linked his credibility findings to substantial evidence.

## **Conclusion**

For the above stated reasons, this Court AFFIRMS the Commissioner's denial of Disability Insurance Benefits.

SO ORDERED this 17th day of October, 2011.

_____
T. Lane Wilson
United States Magistrate Judge